# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 23-60494

WILL McRANEY,

*Plaintiff-Appellant,*

v.

THE NORTH AMERICAN MISSION BOARD
OF THE SOUTHERN BAPTIST CONVENTION, INCORPORATED,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI, ABERDEEN IN NO. 1:17-CV-80,
HONORABLE GLEN H. DAVIDSON, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFF-APPELLANT

SCOTT E. GANT
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727
sgant@bsfllp.com
*Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

No. 23-60494

Will McRaney,

*Plaintiff-Appellant*,

v.

The North American Mission Board of the Southern Baptist Convention, Inc.,

*Defendant-Appellee*.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Will McRaney – Plaintiff
Sandy McRaney – Plaintiff's Spouse
Boies Schiller Flexner LLP – Counsel for Plaintiff
Scott E. Gant – Counsel for Plaintiff
Victoria Scordato – Counsel for Plaintiff
William Harvey Barton, II – Counsel for Plaintiff
The North American Mission Board of the Southern Baptist Convention, Inc. – Defendant
Butler Snow LLP – Counsel for Defendant
Kathleen Ingram Carrington – Counsel for Defendant
Joshua J. Wiener – Counsel for Defendant
Wilmer Cutler Pickering Hale & Dorr LLP – Counsel for Defendant
Matthew T. Martens – Counsel for Defendant
Timothy Jeffrey Perla – Counsel for Defendant
Joshua Aisen Vittor – Counsel for Defendant

_____
s/ Scott E. Gant

Counsel of Record for Plaintiff-Appellant

i

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Dr. McRaney requests oral argument. The District Court's Order and accompanying Memorandum Opinion dismissing Dr. McRaney's case are wrong in almost every material respect. The District Court's analysis and conclusion that it had to dismiss for lack of subject matter jurisdiction based on the ecclesiastical abstention doctrine misapprehends the facts and the law, while itself threatening religious liberty and raising Establishment Clause concerns. The District Court compounded the errors underlying its conclusion with two significant procedural mistakes: (1) purporting to grant summary judgment after the court determined it lacked subject matter jurisdiction, and (2) refusing to abide by the clear statutory requirement in 28 U.S.C. § 1447(c) that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.

This appeal presents important procedural and substantive issues, and Dr. McRaney respectfully submits that oral argument will significantly aid the Court's adjudication of this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF AUTHORITIES ..............................................................................v

STATEMENT OF JURISDICTION....................................................................1

STATEMENT OF THE ISSUES........................................................................2

STATEMENT OF THE CASE............................................................................3

    A.   The Original Complaint and District Court Proceedings.....................3

    B.   Earlier Appellate Proceedings.............................................................5

        1.   This Court's Decision in *McRaney I* ............................................5

        2.   NAMB's Petition for Rehearing En Banc, and the Submission of an Amicus Brief Containing False Representations .......................................................................5

        3.   NAMB's Petition for Certiorari.....................................................8

    C.   District Court Proceedings After Remand ...........................................9

    D.   Summary Judgment Motions After the Close of Discovery ...............15

    E.   District Court's August 15, 2023 Order and Opinion .........................16

SUMMARY OF ARGUMENT ........................................................................16

STANDARD OF REVIEW ..............................................................................18

ARGUMENT ...................................................................................................18

I.   The District Court Dismissed for Lack of Subject Matter Jurisdiction, and Its Purported Entry of Summary Judgment Was Erroneous ...............18

II.   The District Court Erroneously Dismissed for Lack of Subject Matter Jurisdiction .................................................................................................20

A.    The Ecclesiastical Abstention Doctrine Cannot Strip a District Court of Subject Matter Jurisdiction ...................................................20

B.    The District Court Failed to Consider or Understand Basic Facts About Baptist Polity...................................................................23

C.    The District Court Misapprehended the Law Concerning the Ecclesiastical Abstention Doctrine .......................................................24

D.    The District Court Failed to Assess Each Cause of Action ................33

E.    The District Court's Approach Undermines Religious Liberty and Raises Establishment Clause Concerns .........................................34

III.   If Subject Matter Jurisdiction Were Absent, the District Court Would Be Required to Remand the Case to State Court ........................................36

CONCLUSION .....................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)............................................................... 20, 22

*Bell v. Presbyterian Church (U.S.A.)*,
126 F.3d 328 (4th Cir. 1997) ................................................. 27, 28

*Belya v. Kapral*,
59 F.4th 570 (2d Cir. 2023) ...........................................................21

*Blessett v. Garcia*,
816 Fed. Appx. 945 (5th Cir. 2020) ..............................................33

*Boaz Legacy, L.P. v. Roberts*,
628 Fed. Appx. 318 (5th Cir. 2016) ..............................................38

*Burri Law PA v. Skurla*,
35 F.4th 1207 (9th Cir. 2022) .......................................................31

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)......................................................................22

*Duarte v. Mayorkas*,
27 F.4th 1044 (5th Cir. 2022) ......................................... 16, 19-20

*Farve v. Potter*,
342 Fed. Appx. 3 (5th Cir. 2009) .................................................19

*Hix v. U.S. Army Corps. of Engineers*,
155 Fed. Appx. 121 (5th Cir. 2005) ..............................................19

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*,
565 U.S. 171 (2012).................................................. 20, 21, 25, 26

*Huntsman v. Corporation of the President of the Church of Jesus Christ of
Latter-Day Saints*,
76 F.4th 962 (9th Cir. 2023) .........................................................29

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North
America*,
344 U.S. 94 (1952)........................................................................25

*McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*,
    980 F.3d 1066 (5th Cir. 2020) ....................................................8, 24

*McRaney v. North American Mission Board of Southern Baptist
    Convention, Inc.,*
    2019 WL 1810991 (N.D. Miss. 2019)............................................4

*McRaney v. North American Mission Board of Southern Baptist
    Convention, Inc.,*
    304 F. Supp. 3d 514 (N.D. Miss. 2018) .........................................4

*McRaney v. North American Mission Board of the Southern Baptist
    Convention, Inc.,*
    966 F.3d 346 (5th Cir. 2020) ............................................. *passim*

*Milner v. Department of Navy*,
    562 U.S. 562 (2011).....................................................................37

*Moon v. Moon*,
    833 Fed. Appx. 876 (2d Cir. 2020)................................... 29, 31, 33

*Ogle v. Hocker*,
    279 Fed. Appx. 391 (6th Cir. 2008) ................................. 29, 30-31

*Osborn v. Haley*,
    549 U.S. 225 (2007).....................................................................37

*Our Lady of Guadalupe School v. Morrissey-Berru*,
    140 S. Ct. 2049 (2020)....................................................... *passim*

*Pfeil v. St. Matthews Evangelical Lutheran Church of Unaltered Augsburg
    Confession of Worthington*,
    877 N.W.2d 528 (Minn. 2016) ....................................................21

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999).....................................................................22

*Simpson v. Wells Lamont Corp.*,
    494 F.2d 490 (5th Cir. 1974) .......................................................33

*Spivey v. Chitimacha Tribe of Louisiana*,
    79 F.4th 444 (5th Cir. 2023) ................................................ 17, 38

*St. Joseph Cath. Orphan Soc'y v. Edwards*,
    449 S.W.3d 727 (Ky. 2014).........................................................21

*Stanley v. Central Intelligence Agency*,
  639 F.2d 1146 (5th Cir. 1981) ........................................................19

*Trust Co. Bank v. U.S. Gypsum Co.*,
  950 F.2d 1144 (5th Cir. 1992) ........................................................38

*Tucker v. Faith Bible Chapel Int'l*,
  36 F.4th 1021 (10th Cir. 2022) ......................................................21

*Willey v. Harris County District Attorney*,
  27 F.4th 1125 (5th Cir. 2022) ........................................................18

## Constitutional Provisions, Statutes & Rules:

U.S. Const. Amend. I ............................................................... *passim*

28 U.S.C. § 1291 ...........................................................................1

28 U.S.C. § 1332 ................................................................. 1, 3, 15

28 U.S.C. § 1447(c) .........................................................17-18, 37-38, 39

28 U.S.C. § 2106 ..........................................................................18

Fed. R. Civ. P. 12 ................................................................. 4, 19, 22

## Other Authorities:

BLACK'S LAW DICTIONARY 232 (11th ed. 2019) ....................................32

Letter of Amici Curiae Ethics and Religious Liberty Commission and
  Thomas More Society, *McRaney v. N. Am. Mission Bd. of the S.
  Baptist Convention, Inc.*, 966 F.3d 346 (5th Cir. 2020) (No. 19-
  60293) (filed Dec. 14, 2020) ...........................................................7

Lael Weinberger, *Is Church Autonomy Jurisdictional?*,
  54 LOY. U. CHI. L. J. 471 (2023)............................................... 22, 28

Lael Weinberger, *The Limits of Church Autonomy*,
  98 NOTRE DAME L. REV. 1253 (2023)......................................... 24, 27

Michael A. Helfand, *Religion's Footnote 4: Church Autonomy as
  Arbitration*, 97 MINN. L. REV. 1891 (2013) ....................................21

## **STATEMENT OF JURISDICTION**

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. After the close of discovery, the District Court issued an order dismissing for lack of subject matter jurisdiction, and an accompanying memorandum opinion, on August 15, 2023.  RE-60, ROA.3994 (Order); RE-48, ROA.3982 (Memorandum Opinion).  Plaintiff-Appellant filed a Notice of Appeal on September 12, 2023.  RE-61, ROA.3995.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1.     May a district court grant summary judgment to a party after the court has determined it lacks subject matter jurisdiction?

2.     Can the "ecclesiastical abstention doctrine" deprive a district court of subject matter jurisdiction?

3.     Does the "ecclesiastical abstention doctrine" deprive the district court of subject matter jurisdiction over some or all of Plaintiff-Appellant's six causes of action?

4.     May a district court decline to remand to state court a case removed to federal court by the defendant after the court has determined it lacks subject matter jurisdiction, given the express provision in 28 U.S.C. § 1447(c) that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court?

## STATEMENT OF THE CASE

### A.     The Original Complaint and District Court Proceedings

In April 2017, Dr. Will McRaney filed a lawsuit in Mississippi state court against the North American Mission Board of the Southern Baptist Convention, Inc. ("NAMB"), a non-profit corporation organized under the laws of Georgia.   Dr. McRaney is not, and never was, an employee of NAMB.   His complaint asserted state common law claims for interference with business relationships, defamation, and intentional infliction of emotional distress.   The complaint alleged past and ongoing misconduct, causing economic and non-economic harm.   The alleged conduct by NAMB occurred both during and after Dr. McRaney was employed by a separate, autonomous organization—the Baptist Convention of Maryland/Delaware ("BCMD").[1]   BCMD is not, and never was, a party to Dr. McRaney's lawsuit.

NAMB removed Dr. McRaney's case to federal court, contending the District Court had subject matter jurisdiction under 28 U.S.C. § 1332.   NAMB then sought dismissal of the complaint on the basis of the "ministerial exception."   The District Court denied that motion because "McRaney was indisputably not employed by

---

[1]  BCMD is "an organization made up of hundreds of autonomous Baptist churches in Maryland and Delaware."   RE-37 at ¶ 6.   BCMD and NAMB "are separate organizations, which have no authority or control over one another.   The two organizations sometimes work in cooperation with one another, on a voluntary basis."   *Id.* at ¶ 7.

3

NAMB," their relationship was not "one of employee-employer," and the "ministerial exception" was therefore inapplicable. *McRaney v. North American Mission Board of Southern Baptist Convention, Inc.*, 304 F.Supp.3d 514, 520 (N.D. Miss. 2018).

As discovery was getting underway, NAMB filed a motion for partial summary judgment, seeking dismissal of some—but not all—of Dr. McRaney's claims, on the purported ground that NAMB was implicitly a third-party beneficiary under a severance agreement between Dr. McRaney and BCMD. After receiving NAMB's motion for partial summary judgment, the District Court issued an order to show cause why it should not remand the case to state court for lack of subject matter jurisdiction. After briefing on the motion and show cause order, the District Court, "[c]onsidering all the facts available to it, and not just those in the complaint," found "this case would delve into church matters," and dismissed the complaint under Federal Rule of Civil Procedure 12(b)(1), finding that "under the First Amendment it lacks subject matter jurisdiction." *McRaney v. North American Mission Board of Southern Baptist Convention, Inc.,* 2019 WL 1810991, at *2 (N.D. Miss. 2019).

4

**B.     Earlier Appellate Proceedings**

**1.     This Court's Decision in *McRaney I***

On appeal, this Court reversed, finding premature the district court's conclusion that "it would need to resolve ecclesiastical questions in order to resolve McRaney's claims." *McRaney v. North American Mission Board of the Southern Baptist Convention, Inc.*, 966 F.3d 346, 347 (5th Cir. 2020) ("*McRaney I*"). Noting that NAMB has "never been McRaney's employer," and that he "is not challenging the termination of his employment," the court explained that "the relevant question is whether it appears certain that resolution of McRaney's claims will require the court to address purely ecclesiastical questions." "At this stage, the answer is no." *Id.* at 349.

During the appeal, NAMB effectively conceded the ministerial exception was not at issue. Although NAMB had initially sought dismissal in the district court on the basis of the ministerial exception, that motion was denied, and NAMB did not maintain that position on appeal. As this Court observed in its opinion: "Both parties agree" that "the ministerial exception is not before us." *McRaney I*, 966 F.3d at 350 n.3.

**2.     NAMB's Petition for Rehearing En Banc, and the Submission of an Amicus Brief Containing False Representations**

Following the adverse 3-0 panel decision, NAMB filed a petition for rehearing en banc. NAMB, an agency of the Southern Baptist Convention (SBC), sought

5

amicus support for its rehearing petition from another agency of the SBC: the Ethics and Religious Liberty Commission (ERLC).  The ERLC joined up with the Thomas More Society to file an amicus brief in support of NAMB's rehearing petition ("the ERLC Amicus Brief").  Neither the ERLC nor NAMB disclosed to this Court that they are part of the same organization—the Southern Baptist Convention.[2]

   ***The ERLC Amicus Brief contained several false statements about Baptist polity.***  For example, the ERLC Amicus Brief inaccurately described the SBC as a "hierarchy" that serves as an "umbrella Southern Baptist governing body over all of the various groups of churches."[3] The Brief's false statements led to a firestorm of criticism and controversy within and outside the Southern Baptist Convention.[4]

---

[2]  One of Dr. McRaney's experts, Dr. Barry Hankins, compared this "to Chevrolet issuing a brief on behalf of Buick, both companies being constituents of General Motors—i.e. part of the same corporation."  ROA.676.  NAMB's witnesses acknowledged the relationship.  *See* ROA.2994 (Ezell Tr. 158:8-11) (acknowledging the ERLC is another SBC entity, and "[k]ind of a sister organization of NAMB"); ROA.2986 (de Armas Tr. 106:4-14) ("NAMB and ERLC are sister agencies"); ROA.3310 (Ferrer Tr. 201: 21-23) (agreeing "NAMB and ERLC are parts of the SBC").

[3]  The falsity of statements in the ERLC Amicus Brief was confirmed during discovery, and was undisputed before the District Court.  *See* ROA.674-76 (Hankins Report); ROA. 2968 (Ferrer Tr. 202:12-15) (agreeing "the ERLC brief contained misstatements about the nature of Southern Baptists"); ROA.2988 (de Armas Tr. 175:13-15) (the misstatements in Amicus Brief "would be obvious to anyone with knowledge of Baptist polity"); ROA.3034 (NAMB 30(b)(6) Tr. 66:15) (falsity of statements in ERLC Amicus Brief were "obvious.").

[4]  *See also* ROA.2996 (Ezell Tr. 294:2-8) (NAMB President: acknowledging "a lot of controversy and complaints" and "SBC drama" about the Amicus Brief); ROA.2987 (de Armas Tr. 172:3-7) (Former NAMB Trustee: "our Southern Baptist family was up in arms about what the ERLC had . . . been a part of in stating, because our SBC family knows that not to be true.  And they were appalled at what ERLC did.").

6

Despite being aware of serious errors in the ERLC Amicus Brief, neither NAMB nor the ERLC brought them to the attention of this Court as it considered NAMB's petition for rehearing. Instead, only months later, *after rehearing was denied* (over the dissents of eight judges who issued opinions based on a record containing false statements), did the ERLC publicly apologize, and send a belated letter to the Court confessing the errors. *See* Letter of Amici Curiae Ethics and Religious Liberty Commission and Thomas More Society, at 1, *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346 (5th Cir. 2020) (No. 19-60293) (filed Dec. 14, 2020). The untimely correction stated:

> [I]t has come to the attention of Amici that the Brief Amici Curiae includes certain factual statements that inaccurately describe the Southern Baptist Convention's polity and theology of cooperative ministry.
>
> All Southern Baptist churches are autonomous, self-determining, and subject only to the Lordship of Christ—no local, state or national entity may exercise control or authority over any Southern Baptist church. Baptists reject the idea of a religious 'hierarchy' or 'umbrella' superior to the local church, or that any Baptist Convention is in a hierarchy or governing relationship over another Convention.

NAMB never corrected or repudiated the ERLC's misrepresentations to this Court. *See* ROA.675 (Hankins Report); *see also* ROA.3034 (NAMB 30(b)(6) Tr. 66:20-67:1).[5]

---

[5] Through third-party discovery, Dr. McRaney learned that NAMB was coordinating with the ERLC and Thomas More Society before the ERLC Amicus Brief was filed. The Thomas More Society produced to Plaintiff a privilege log showing that NAMB's outside counsel received a draft of the ERLC amicus brief shortly before it was filed. ROA.3137-43. NAMB acknowledged

This Court denied NAMB's petition for rehearing en banc, by a vote of 9-8. *McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*, 980 F.3d 1066 (5th Cir. 2020). Six of the judges who voted for rehearing en banc inaccurately described the conduct challenged in Dr. McRaney's district court complaint as an "internal dispute over who should lead a church." *Id.* at 1067. While the source of that factual error is unclear, it could have been based on erroneous representations presented in the ERLC Amicus Brief, corrected by the brief's sponsors only after the ruling on rehearing.

### 3.    NAMB's Petition for Certiorari

NAMB filed a petition for certiorari in the Supreme Court. *See* Petition for Writ of Certiorari, *N. Am. Mission Bd. of the S. Baptist Convention, Inc. v. McRaney*, 141 S. Ct. 2852 (2021) (No. 10-1158) (filed Feb. 17, 2021). Although NAMB claimed this Court's *McRaney I* decision was "erroneous[]," "deviates from the reasoning of [Supreme Court] decisions" (*id.* at 16), and conflicts with decisions of other courts of appeals (*id.* at 24), the Supreme Court denied NAMB's request for review, with no recorded dissents.

---

at its 30(b)(6) deposition that it has no basis for disputing the accuracy of that privilege log. ROA.3040 (NAMB 30(b)(6) Tr. 91:24-92:7).

**C.     District Court Proceedings After Remand**

More than four years after Dr. McRaney's complaint was filed, the parties returned to the District Court to commence discovery.

During discovery, on December 7, 2022, the District Court granted Dr. McRaney's request to file a Supplemental Pleading, which he did later that day. *See* RE-35.  As the District Court recognized in granting Dr. McRaney's request, the Supplemental Pleading both "clarif[ied] [Dr. McRaney's] original allegations" and also "address[ed] events that occurred subsequent to the initial [April 2017] pleading"—filed more than five years earlier.  ROA.1311, 1313.

Like his original 2017 pleading, Dr. McRaney's Supplemental Pleading alleges interference with business and contractual relationships, defamation, and infliction of emotional distress.  The Supplemental Pleading organizes the causes of action into two time periods—with three causes of action covering the period leading up to Dr. McRaney's termination by BCMD, and three covering the period after termination when Dr. McRaney had no relationship with BCMD.  With respect to the later period, Dr. McRaney has alleged, *inter alia*, that:

- Since Plaintiff's termination by BCMD, and continuing to the present, NAMB has engaged in additional tortious conduct, which has interfered with Plaintiff's prospective business relationships with third-parties, injured his professional and personal reputation, and caused emotional distress.  RE-39 at ¶ 21.

- This conduct includes NAMB's disparagement of Plaintiff.  For example, NAMB has told people outside of NAMB that Plaintiff lies, and that he is

"delusional." *Id.* at ¶ 22.

- NAMB disparaged and harmed Plaintiff by taking the unprecedented step of posting a photo of Plaintiff at the reception desk of NAMB's headquarters, for the purpose of denying him entry to the building. This no-entry-photo, in the lobby of NAMB's building, was visible to NAMB personnel and visitors, and kept up for at least many months in 2016, and perhaps longer. The no-entry-photo of Plaintiff communicated that Plaintiff was not to be trusted and an enemy of NAMB. The no-entry-photo of Plaintiff was posted by NAMB at the direction of its President, Kevin Ezell. *Id.* at ¶ 23.

- NAMB's conduct after Plaintiff's termination by BCMD has had the purpose and effect of blackballing or blacklisting him, impeding his ability to earn a living after his termination by BCMD—resulting in a significant loss of income. RE-40 at ¶ 24.

- In addition to being unable to find a full-time job for years after his termination by BCMD, NAMB's conduct also impeded Plaintiff's opportunities as a speaker and presenter at conferences and meetings— opportunities which enhanced Plaintiff's professional profile, gave him forums to promote, and sometimes sell, his books and publications, and were a source of personal enjoyment and satisfaction. RE-41 at ¶ 27.

- NAMB's interference with contractual and economic relations, disparagement, and infliction of emotional distress have continued since Plaintiff filed his complaint against NAMB in state court, in April 2017. For example, since the original complaint was filed, NAMB has continued to assert that Plaintiff violated a civil legal agreement between BCMD and NAMB, that he is a liar, and has called Plaintiff "delusional." RE-42 at ¶ 30.

- NAMB has also deployed other arms of the SBC in its campaign against Plaintiff. For instance, the SBC's Baptist Press told a prominent journalist who had previously worked as a freelancer, that she might get future work if she "would stop writing about Will McRaney." *Id.* at ¶ 32.

- As with NAMB's conduct prior to Plaintiff's termination by BCMD, NAMB's conduct since the termination has had the purpose and effect of making Plaintiff a professional pariah. *Id.* at ¶ 33.

- NAMB has made numerous out-of-court misrepresentations about Plaintiff's positions and purported demands with respect to this litigation. These misrepresentations have also disparaged Plaintiff, further damaging his professional standing and status, and causing him emotional distress. For example, in out-of-court public statements, NAMB has: Falsely claimed that Plaintiff "resigned" from BCMD despite knowing that BCMD's Board voted to terminate his employment; [and] [f]alsely disparaged Plaintiff, portraying him as unreasonable, greedy, and seeking to unfairly *enrich himself*, by disclosing confidential settlement negotiations with Plaintiff and asserting Plaintiff "demand[ed] that NAMB pay him more than $7.7 million." RE-42-43 at ¶¶ 35-36.

NAMB filed an Answer to the Supplemental Pleading on December 21, 2022. *See* ROA.1365. Those were the operative pleadings at the time the District Court dismissed the case.

During discovery, Dr. McRaney timely filed reports from two experts— Dr. David Sharp, an economist, concerning damages, and Dr. Barry Hankins, a Professor of History at Baylor University, whose scholarly work includes *Baptists in America: A History* (New York: Oxford University Press, 2015) (co-authored). *See* ROA.667-700 (Hankins Report); ROA.702-748 (Sharp Report).

Dr. Hankins's Report sets out "opinions about several issues, based upon [his] years of research and scholarship about topics including Christianity in America, Baptists and Southern Baptists, and the relationship between Church and State in the United States," including the following:

> While I am not offering a legal opinion in this matter, my knowledge and expertise leads me to conclude that NAMB's First Amendment defense, and invocation of these doctrines, is misplaced as a matter of fact. It is my opinion, based on years of research and scholarship, including about Southern Baptists

specifically and Church-State relations more broadly, that there is no valid factual foundation for NAMB's First Amendment defense in this case. ROA.681.

Elaborating, Dr. Hankins explained (ROA.681-83):

- By contrast to Southern Baptists, pastors in other Christian denominations often (in fact, usually) are under the authority of the denominational hierarchy as well as their own congregations. This is true in varying degrees and in various ways for the Roman Catholic Church, Episcopal Church, Lutheran Church (all three major Lutheran denominations as well as the smaller ones), the United Methodist Church, and various Presbyterian denominations. Catholics, Episcopalians, Lutherans, and Methodists are hierarchal denominations with authority flowing from the top down through bishops. It is even the case that individual congregations are actually "parishes" of the larger unified "church," which is why "Church" is part of the official name of the denomination. Presbyterians are somewhat different in that they are organized in a representative, or republican, manner where representatives from congregations convene in a presbytery. Presbyteries send representatives to the session, and a session sends representatives to the general assembly. In this way, Presbyterians are similar to Baptists in that there is power and authority flowing from the congregations upward to the general assembly. The similarity ends, however, where a Presbyterian General Assembly can, for example, try a pastor for heresy and expel him or her from the denomination. The General Assembly could likewise discipline or expel a congregation.

- When the Roman Catholic Church, the Episcopal Church, the United Methodist Church, or Presbyterian Church USA, discipline an individual or a congregation, they can claim "ecclesiastical abstention," "church autonomy," and/or "ministerial exception" because their actions constitute an inner-church dispute and are therefore protected by the First Amendment's Free Exercise Clause. Whether they win or not is a matter for the courts, but their claims are usually historically compelling.

- The only way Baptists could make such a First Amendment claim would be if the dispute was within an individual congregation, within the SBC, within a state convention, or within a local association. Any dispute between or among any of those entities—congregations, local associations, state conventions, or the SBC—would be a dispute between separate and independent entities and not an inner-church dispute. This is because, at the

risk of redundancy, "There is no Baptist church; only Baptist churches"—and Baptist associations, Baptist state conventions, and a national (in this case the Southern Baptist) convention.

- [A]t an earlier stage of this case, the Court referred to the "ecclesiastical abstention doctrine" as preventing secular courts from reviewing disputes that would require an analysis of "theological controversy, church discipline, ecclesiastical government, or the conformity of members of [a] church to the standard of morals required [by that church]." McRaney v. NAMB, 2018 WL 1041298 (Feb. 22, 2018). It is my opinion that no analysis of any such issues is required or warranted in this case.

- As previously explained, NAMB is not a church, and the BCMD is not part of NAMB or the SBC. Moreover, Dr. McRaney never worked for NAMB, and his claims do not require the Courts to wade into a theological controversy, or to review a matter of church discipline, ecclesiastical government, or the conformity of members of a church to the standard of morals required by that church.

- Dr. McRaney was not an employee, agent, or member of NAMB. He asserts he suffered harm based on tortious acts by NAMB leading to and after his termination by BCMD. His claims against NAMB from a First Amendment standpoint are no different than if he worked for a secular organization separate from NAMB.

- NAMB's position in this case is inconsistent with, and contradicted by, long-standing Southern Baptist polity. As I and my co-author Thomas Kidd concluded in Baptist in America: A History, there are three features that mark virtually all Baptists from their beginnings in the early seventeenth century to the present: Baptism, the independence or autonomy of the local church, and a willingness to call themselves Baptists. As we wrote [p, 251], "Whether completely independent and unaffiliated with other congregations, voluntarily associated with other Baptists in a society, or bound together in a relatively centralized convention, Baptists claim that their congregations are independent." If congregations are independent and autonomous they can only join together voluntarily in associations, state conventions, and a national (Southern Baptist) convention. They do not relinquish their autonomy in doing so, and they fiercely guard the independence and autonomy of the associations and state conventions they create.

13

Dr. Hankins further observed in his report: "[I]t is my opinion as a scholar of Church-State relations in the United States that NAMB's First Amendment defense in this case, if accepted by courts, would actually undermine religious liberty rather than safeguard it." ROA.683. He explained:

- As noted above, Dr. McRaney's claims against NAMB are, from a First Amendment standpoint, no different than if he worked for a secular organization separate from NAMB. He claims that an organization he did not work for (NAMB) improperly interfered in his relationship with his employer (BCMD), and then after he was terminated (due to that interference), NAMB continued to interfere with his ability to make a living as a preacher and religious executive. NAMB wants to deprive Dr. McRaney of his right to pursue relief in the courts of this country, on the ground that Dr. McRaney makes his living working with religious people and groups. Thus, under NAMB's view of the world, a citizen working with religious people and groups loses the right to challenge the conduct of a separate religious organization for which the citizen was never an employee or a member, simply because the citizen makes his living working with religious people and separate religious groups. That is an upside down understanding, where NAMB claims First Amendment protection to interfere in Dr. McRaney's free exercise of religion. Again, this would make some sense if Dr. McRaney worked for NAMB, but he never did. ROA.684.

- [I]f NAMB's interpretation of the First Amendment prevailed (an interpretation that matches the erroneous and rescinded view of the ERLC in its amicus brief), every Baptist entity that cooperates in any way with the SBC would be put at risk—congregations, associations, and state conventions. The view that the SBC can claim itself as a "hierarchy" or "umbrella organization" over other Baptist entities essentially transforms the SBC, making it akin to hierarchical or presbyterian denominations from which Baptists have always distinguished themselves. It is not going too far to say that one of the principal reasons Baptists came into existence was because of the theological belief that religious authority resides only in local congregations, not in a hierarchy of bishops or in a presbyterian body claiming to represent those congregations. Should the courts accept NAMB's interpretation, we would have a most curious situation, to put it mildly, where Baptists say they are one thing, but the courts treat them as something else. In short, the U.S. court system will

have transformed and redefined Baptists into something they have always insisted they are not. That would be an affront to religious liberty. *Id.*

NAMB did not serve any expert reports, nor did it file a motion under the Federal Rules of Evidence challenging Dr. Hankins's report or opinions.

The parties completed fact and expert discovery, including from third-parties.

## D.    Summary Judgment Motions After the Close of Discovery

At the conclusion of discovery NAMB moved for summary judgment, contending: (1) "the First Amendment precludes adjudication of this lawsuit"; (2) Dr. McRaney "released his claims against NAMB"; and (3) "the evidence shows that there are no genuine issues of material fact as to the merits of each of Plaintiff's claims." ROA.1689. The District Court did not rule on the second and third arguments, which are not relevant to this appeal.[6]

NAMB's summary judgment motion did not mention subject matter jurisdiction, or assert that it is absent.[7]

---

[6] Dr. McRaney moved for partial summary judgment with respect to some of NAMB's affirmative defenses. ROA.2831, 2887. The District Court did not rule on that motion, and it is not directly relevant to this appeal.

[7] NAMB's Answer to Dr. McRaney's Supplemental Pleading did not list lack of subject matter jurisdiction as a defense or affirmative defense. ROA.1365-1377. In response to Dr. McRaney's allegation about the Court's jurisdiction in the Supplemental Pleading, NAMB wrote: "NAMB admits that it properly removed this action on the basis of diversity jurisdiction, and that this case meets the requirements of 28 U.S.C. § 1332(a). NAMB submits, however, that this Court lacks subject matter jurisdiction over some or all of Plaintiff's claims based on the religion clauses of the First Amendment. To the extent the allegations in this Paragraph conflict with that position, such allegations are denied." ROA.1371 at ¶ 3.

**E.    District Court's August 15, 2023 Order and Opinion**

Although not an argument made by NAMB at summary judgment, on August 15, 2023, one month before trial was scheduled to begin, the District Court dismissed Dr. McRaney's case for lack of subject matter jurisdiction based on its understanding and application of the "Ecclesiastical Abstention Doctrine." *See* RE-60, ROA.3994 (Order); RE-48, ROA.3982 (Memorandum Opinion). The District Court also purported to "GRANT[]" Defendant's motion for summary judgment, with the District Court's subject matter determination as the sole basis for the entry of summary judgment for NAMB.

<u>**SUMMARY OF ARGUMENT**</u>

Dr. McRaney appeals the District Court's dismissal of his case for lack of subject matter jurisdiction. The District Court's Order and accompanying Memorandum Opinion are wrong in almost every material respect.

First, this Court's precedents make clear that when a district court lacks subject matter jurisdiction it may not grant summary judgment. *See*, *e.g.*, *Duarte v. Mayorkas*, 27 F.4th 1044, 1051 n.5 (5th Cir. 2022) ("[S]ummary judgment is not a vehicle to dispose of a case for lack of jurisdiction."). Yet the District Court did precisely that: it "DISMISSED for lack of subject matter jurisdiction," then also purported to "GRANT[]" Defendant's motion for summary judgment. That was an error.

Second, the District Court's dismissal based on the ecclesiastical abstention doctrine is profoundly wrong.  As an initial matter, the doctrine does not strip a federal court of subject matter jurisdiction, and dismissal was therefore improper.  The District Court's conclusion that the doctrine bars Dr. McRaney's claims is also premised on misapprehensions of fact and law.  Properly construed and applied, the ecclesiastical abstention doctrine does not warrant (let alone require) dismissal of *any* of Dr. McRaney's causes of action.  But the idea is even more dubious when applied to the causes of action concerning post-termination conduct (Counts 4-6).  During that time, Dr. McRaney was not an employee of BCMD, and he had no dealings with NAMB.  The District Court conducted no meaningful analysis of why those claims supposedly must be dismissed.  The District Court's order dismissing based on the ecclesiastical abstention doctrine was an error—and itself threatens religious liberty and raises Establishment Clause concerns.

Third, if subject matter jurisdiction had been absent, the District Court would have been required to remand the case to state court.  Congress has expressly directed in the statute governing removal that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded" to state court.  28 U.S.C. § 1447(c) (emphasis added).  The statute does not vest a court with discretion or provide for any exceptions.  *Spivey v. Chitimacha Tribe of Louisiana*, 79 F.4th 444, 448 (5th Cir. 2023) (Section 1447(c) does not

include "an unwritten futility exception"). The District Court acknowledged the statutory language, but declined to abide by it. That was an error.

The District Court's Order should be vacated, and the case remanded to the District Court to adjudicate the fully briefed motions for summary judgment.[8]

## STANDARD OF REVIEW

This Court reviews a dismissal for lack of subject matter jurisdiction *de novo*. *See McRaney I,* 966 F.3d at 348.

## ARGUMENT

**I.    The District Court Dismissed for Lack of Subject Matter Jurisdiction, and Its Purported Entry of Summary Judgment Was Erroneous**

The District Court "DISMISSED for lack of subject matter jurisdiction." While that determination was wrong for the reasons explained below, once the District Court believed subject matter jurisdiction was absent, it lacked authority to rule on the parties' respective motions for summary judgment. The District Court nevertheless purported to "GRANT[]" Defendant's motion for summary judgment.

---

[8]   Appellate courts may reassign cases to a different judge on remand under their authority to "require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106; *see also Willey v. Harris County District Attorney*, 27 F.4th 1125, 1137 (5th Cir. 2022). Because Senior Judge Davidson has twice dismissed Dr. McRaney's case erroneously concluding there is a lack of subject matter jurisdiction, and because he continues to misapprehend both relevant facts and the nature of Dr. McRaney's claims, the interests of justice warrant that this Court's remand order direct the case be reassigned to a different judge in the Northern District of Mississippi.

Even though the sole basis for the entry of summary judgment for NAMB was the District Court's subject matter determination, granting summary judgment nevertheless was procedurally improper.  As this Court has made clear, "[w]hen a court must dismiss a case for lack of jurisdiction, the court should not adjudicate the merits of the claim.  Since the granting of summary judgment is a disposition on the merits of the case, a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction." *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981) (internal citations omitted); *see also Farve v. Potter*, 342 Fed. Appx. 3, 5 (5th Cir. 2009) ("[W]hen a court lacks subject-matter jurisdiction, it is inappropriate to render summary judgment on the merits . . . .  Rather, when there is no subject-matter jurisdiction, the case should be dismissed."); *Hix v. U.S. Army Corps. of Engineers*, 155 Fed. Appx. 121, 128 (5th Cir. 2005) ("The district court erred, however, when it granted J & S's motion for summary judgment for lack of subject-matter jurisdiction.  Because  summary judgment acts as a final adjudication on the merits, the court was without jurisdiction to enter such a judgment."); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action.") (emphasis added).

Because this Court's "precedents establish that a grant of summary judgment is an adjudication on the merits, and summary judgment is not a vehicle to dispose

of a case for lack of jurisdiction," *Duarte*, 27 F.4th at 1051 n.5, the District Court's

granting summary judgment was an error, and the Order must be vacated.

## II.    The District Court Erroneously Dismissed for Lack of Subject Matter Jurisdiction

### A.    The Ecclesiastical Abstention Doctrine Cannot Strip a District Court of Subject Matter Jurisdiction

The District Court dismissed, believing the "ecclesiastical abstention

doctrine" can deprive a district court of subject matter jurisdiction.  The District

Court is wrong: the "ecclesiastical abstention doctrine" is not jurisdictional, as the

Supreme Court uses that term since clarifying that "jurisdiction" is "a word of many,

too many, meanings" and admitting that the Supreme Court, "no less than other

courts, has sometimes been profligate in its use of the term." *Arbaugh v. Y&H

Corp.*, 546 U.S. 500, 510 (2006).

While this Court left open the question at an earlier stage in this case, *see

McRaney I*, 966 F.3d at 348 n.1, the "ecclesiastical abstention doctrine" does not

strip a federal court of subject matter jurisdiction.

In *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, the

Supreme Court held that the "ministerial exception" "operates as an affirmative

defense to an otherwise cognizable claim, not a jurisdictional bar."  565 U.S. 171,

195 n.4 (2012). There is no reason to think the Supreme Court would treat

"ecclesiastical abstention" differently from the "ministerial exception" for purposes

20

of subject matter jurisdiction. *See*, *e.g.*, *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1029 (10th Cir. 2022) ("the church autonomy doctrine" is an "affirmative defense"); *Belya v. Kapral*, 59 F.4th 570, 584 (2d Cir. 2023) (Chin, J., statement in support of denial of rehearing en banc) ("The church autonomy doctrine is a defense and it does not provide a general immunity that serves as a jurisdictional bar to suit."); *Pfeil v. St. Matthews Evangelical Lutheran Church of Unaltered Augsburg Confession of Worthington*, 877 N.W.2d 528, 534-35 (Minn. 2016); *St. Joseph Cath. Orphan Soc'y v. Edwards*, 449 S.W.3d 727, 730, 736-737 (Ky. 2014); *see also* Michael A. Helfand, *Religion's Footnote 4: Church Autonomy as Arbitration*, 97 MINN. L. REV. 1891, 1898 (2013) (observing about *Hosanna-Tabor* that "by conceptualizing the ministerial exception as an affirmative defense, the Court implicitly rejected the jurisdictional approach to judicial intervention in cases implicating religious matters."); *McRaney I*, 966 F.3d at 348 n.1 (calling "related" the ministerial exception and ecclesiastical abstention). For its part, the District Court did not even acknowledge *Hosanna-Tabor's* footnote 4, let alone try to distinguish it.

Separate and apart from *Hosanna-Tabor's* footnote 4, there are powerful considerations favoring the view that the "ecclesiastical abstention doctrine" is non-jurisdictional. For example, treating the doctrine as non-jurisdictional is consistent with how other First Amendment principles are litigated. "Church autonomy's

textual foundation is the First Amendment.  It is hard to see why it should be treated

differently from other First Amendment doctrines as a matter of judicial power.

Federal and state courts can adjudicate lots of issues and then deal with constitutional

defenses."  Lael Weinberger, *Is Church Autonomy Jurisdictional?*, 54 LOY. U. CHI.

L. J. 471, 494-495 (2023); *id.* at 496 ("For purposes of Rule 12, it is better to think

of church autonomy as an affirmative defense than as jurisdictional in the technical,

procedural sense.").  It is also consistent with the Supreme Court's admonition that

federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction

given them" by Congress.  *Colorado River Water Conservation Dist. v. United

States*, 424 U.S. 800, 817 (1976).  In addition, were the ecclesiastical abstention

doctrine jurisdictional, it could not be forfeited or waived, and would require both

trial and appellate courts in every case having any religious dimension to conduct an

analysis of whether it could proceed, even when not raised by parties.  *Ruhrgas AG

v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must

be policed by the courts on their own initiative even at the highest level.").  That

would be an enormous "waste of judicial resources."  *Cf. Arbaugh*, 546 U.S. at 515.

Because the "ecclesiastical abstention doctrine" does not strip a federal court

of subject matter jurisdiction, dismissal here was improper.

22

**B.    The District Court Failed to Consider or Understand Basic Facts About Baptist Polity**

The following are basic, undisputed facts about Baptist polity:

- NAMB is not a church (ROA.682);

- BCMD is not a church, (ROA.2578, Hankins Tr. 251:9);

- BCMD and NAMB are separate from, and autonomous of, one other, (ROA.678); and

- There is no "Baptist Church," or "Southern Baptist Church" (ROA.678).[9]

The District Court nevertheless dismissed Dr. McRaney's case for lack of subject

matter jurisdiction based on the court's mistaken belief that:

- "Plaintiff's claims . . . are brought to protest his dismissal from ***church leadership***";

- Dr. McRaney's position at BCMD "by its very terms invokes ***the Church's*** religious mission";

- In his position at BCMD, Dr. McRaney "had a primary role in conveying ***the Baptist Church's*** message and carrying out ***its*** religious mission";

- It "would necessarily be required to interpret and decide matters of ***church government***"; and

---

[9]  In its brief opposing Dr. McRaney's request to file an updated complaint, NAMB referred to "the Southern Baptist Church." ROA.1122 at n.1.  Because there is no such thing, and with the firestorm over the ERLC Amicus Brief still in mind, NAMB's misrepresentation was called out. *See*, *e.g.*, https://capstonereport.com/2022/11/18/here-we-go-again-namb-lawyers-lie-in-new-brief/40037/ (Nov. 18, 2022).  A few days later, NAMB filed a corrected brief removing the reference to "the Southern Baptist Church." ROA.1267 at n.1.

- The reasons BCMD decided to terminate Dr. McRaney is "an internal management decision that is left . . . entirely to the discretion of ***the Church***." (RE-53-55) (emphasis added).

This case does not involve an intra-church dispute in any respect, nor is it about church governance—or faith, or doctrine. The District Court's misunderstandings are plain errors—not harmless ones—which infected the District Court's analysis and application of the ecclesiastical abstention doctrine. On this basis alone, the District Court's dismissal order must be vacated, and the case remanded.

## C.    The District Court Misapprehended the Law Concerning the Ecclesiastical Abstention Doctrine

There surely is "doctrinal confusion in the courts" about the ecclesiastical abstention doctrine. Lael Weinberger, *The Limits of Church Autonomy*, 98 NOTRE DAME L. REV. 1253, 1307 (2023).[10] The District Court, however, has added to that confusion, by misapprehending, and misapplying, the doctrine here.

---

[10] Even the nomenclature can be confusing. The District Court dismissed based on the "ecclesiastical abstention doctrine." Appellant has not identified any occasion when the Supreme Court used the phrase "ecclesiastical abstention"—let alone referred to it as a doctrine. In *McRaney I*, the panel observed that the ecclesiastical abstention doctrine is also known as the "religious autonomy doctrine." 966 F.3d at 347. The dissent from the denial of rehearing en banc authored by Judge Ho invoked the "church autonomy doctrine," *McRaney*, 980 F.3d at 1067, while the dissent authored by Judge Oldham relied on the "ecclesiastical-autonomy doctrine," *id.* at 1075. The Supreme Court has rarely used the phrase "church autonomy," but recently described "the general principle of church autonomy" as concerning "independence in matters of faith and doctrine and in closely linked matters of *internal* government." *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2061 (2020) (emphasis added). For purposes of this brief, Appellant assumes all of these phrases refer to the same cluster of legal principles—even if courts and scholars disagree about their scope or application.

The District Court relied on three Supreme Court decisions in its discussion of ecclesiastical abstention: *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94 (1952); *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012); and *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020). None of them support dismissal of Dr. McRaney's claims.

*Kedroff* concerned a "New York statute putting the Russian Orthodox churches of New York under the administration of the Russian Church in America." *Id*. at 120. As the Court recounted in *Hosanna-Tabor*, 565 U.S. at 186:

> At issue in *Kedroff* was the right to use a Russian Orthodox cathedral in New York City. The Russian Orthodox churches in North America had split from the Supreme Church Authority in Moscow, out of concern that the Authority had become a tool of the Soviet Government. The North American churches claimed that the right to use the cathedral belonged to an archbishop elected by them; the Supreme Church Authority claimed that it belonged instead to an archbishop appointed by the patriarch in Moscow. New York's highest court ruled in favor of the North American churches, based on a state law requiring every Russian Orthodox church in New York to recognize the determination of the governing body of the North American churches as authoritative.

This case has nothing relevant in common with *Kedroff*. And to the extent *Kedroff* articulates general First Amendment principles, this Court's decision in *McRaney I* cited *Kedroff* and is fully in accord with it. *See* 966 F.3d at 348. Thus, any suggestion that *Kedroff* requires or warrants dismissal is misguided.

In *Hosanna-Tabor*, the Supreme Court, for the first time, recognized the "ministerial exception." 565 U.S. at 188. In *Morrissey-Berru*, the Court applied that exception to "teachers at religious schools who are entrusted with the responsibility of instructing their students in the faith." 140 S. Ct. at 2055.

*Hosanna-Tabor* bears no resemblance to this case. The question there was whether the Religion Clauses of the First Amendment bar an employment discrimination lawsuit "when the employer is a religious group and the employee is one of the group's ministers." 565 U.S. at 176-77. The Court held that both Clauses "bar the government from interfering with the decision of a religious group to fire one of *its* ministers." *Id*. at 181 (emphasis added); *id*. at 188 ("ministerial exception" concerns "the *employment relationship* between a religious institution and *its* ministers") (emphasis added). Here, Dr. McRaney is not suing or challenging the conduct of his former employer, BCMD—and he never was an employee of NAMB. In addition, the District Court's reliance on *Hosanna-Tabor* ignores the narrowness of its holding. As the Supreme Court explained: "We express no view on whether the [ministerial] exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers." 565 U.S. at 196.

*Morrissey-Berru* likewise offers no support to the District Court. There, as in *Hosanna-Tabor*, the Court focused on protecting the autonomy of religious

26

institutions "with respect to *internal* management decisions that are essential to the institution's central mission," while reaffirming such institutions do not "enjoy a general immunity from secular laws." *Morrissey-Berru*, 140 S. Ct. at 2060 (emphasis added). Here, McRaney was not an employee of NAMB, and his lawsuit concerns NAMB's actions directed toward him, which are alleged to be actionable under generally applicable state tort law, not NAMB's "internal management." *See* Lael Weinberger, *The Limits of Church Autonomy*, 98 NOTRE DAME L. REV. 1253, 1258 (2023) ("Church autonomy protects the internal self-governance of religious organizations.").

The District Court also relies on *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328 (4th Cir. 1997), but that reliance is misplaced. The plaintiff in *Bell* was the former executive director of an interfaith organization that terminated him. The plaintiff named as defendants the "four principal constituent religious organizations" of the interfaith group, *id.* at 329, which the Fourth Circuit determined to be a "joint ministry of its constituent churches." *Id*. at 332. Thus, the plaintiff in *Bell* effectively *sued his employer*—in contrast with Dr. McRaney, who never directly or indirectly worked for NAMB (and there is no "joint ministry" between BCMD and NAMB).[11]   Moreover, *Bell* obviously is not authoritative in this Court.   But,

---

[11]  Apparently trying to make this case look like *Bell*, NAMB twice misleadingly told the District Court that the SPA was a "joint ministry agreement."  ROA.4102-4103.  The District Court uncritically adopted NAMB's characterization (RE-48), even though Dr. McRaney contested it in

according to NAMB, *Bell* is also *contrary* to Fifth Circuit law.   NAMB's unsuccessful petition to the Supreme Court contended that this Court's decision in this case "stands in stark contrast" with *Bell*.   Petition for Writ of Certiorari, *McRaney*, 141 S. Ct. 2852 (No. 10-1158), at 24; *id*. at 26 ("The Fifth Circuit's decision here is irreconcilable with the Fourth Circuit's decision in *Bell*.").   If NAMB was being honest with the Supreme Court, then *Bell* is irrelevant.

Of course, this appeal does not arrive at the Court on a blank slate.   In *McRaney I*, this Court made several important observations that apply here—and which the District Court failed to heed.   This Court made clear the ecclesiastical abstention doctrine "recognizes that the Establishment Clause of the First Amendment precludes judicial review of claims that require resolution of '*strictly and purely* ecclesiastical' questions." 966 F.3d at 348 (emphasis added).[12]   The District Court paid lip service to the "strictly and purely" limitation, but failed to take it seriously.   Discovery has not changed the fact that Dr. McRaney "is not

---

a formal evidentiary objection.  ROA.3337-39 ("NAMB claims without support that the SPA is 'a joint ministry agreement.'  The SPA itself does not use that language, and NAMB cited no record support for this undefined term.  NAMB's then-Executive Vice President and Chief Financial Officer, Carlos Ferrer, testified at his deposition that the SPA is 'a contractual agreement.' Ferrer Tr. 108:19.").

[12]  The District Court's version of the doctrine "is rooted in the First Amendment's free exercise clause," rather than the Establishment Clause.  RE-52.  "There is some debate among scholars as to which of the two [First Amendment religion] clauses is doing the work in church autonomy, or if they both work together."  Lael Weinberger, *Is Church Autonomy Jurisdictional?*, 54 Loy. U. Chi. L. J. 471, 489 (2023).

challenging the termination of his employment . . . and he is not asking the court to weigh in on issues of faith or doctrine." *Id.* at 349. "His complaint asks the court to apply neutral principles of tort law to a case that . . . involves a civil rather than religious dispute." *Id.* Adjudication of Dr. McRaney's claims will not require a court or jury "to *interfere* with matters of church government, matters of faith, or matters of doctrine." *Id.* at 351 (emphasis added).

The District Court seems to believe the First Amendment deprives federal courts of authority to hear any case involving in any way matters of religion. But this Court rejected that view in *McRaney I. See* 966 F.3d at 348-349. So too have other courts of appeals. *See*, *e.g.*, *Huntsman v. Corporation of the President of the Church of Jesus Christ of Latter-Day Saints*, 76 F.4th 962, 968 (9th Cir. 2023) ("The ecclesiastical abstention doctrine protects First Amendment rights by avoiding court entanglement 'in essentially religious controversies' or the state intervening on behalf of a religious doctrine…In the case before us, we are not required to rely on or interpret the Church's religious teachings . . . ."); *Moon v. Moon*, 833 Fed. Appx. 876, 879 (2d Cir. 2020) ("[C]ourts are not precluded from resolving disputes simply because the outcome would have religious implications."); *Ogle v. Hocker*, 279 Fed. Appx. 391, 396 (6th Cir. 2008) ("While we are solicitous of protecting religious services from interference, we do not believe it proper to simply label a sermon as 'ecclesiastical' and bar suit. Rather, we ask whether the suit will require us to delve

into protected matters of church doctrine, policy, and practice."). No religious group or institution has "general immunity from secular laws." *Morrissey-Berru*, 140 S. Ct. at 2060.

Here, Dr. McRaney advances familiar state law tort claims, alleging NAMB defamed him, intentionally inflicted emotional distress, and interfered with contractual relations (and prospective relations following his termination). NAMB has never contended that its actions concerning Dr. McRaney were *compelled or encouraged by religious doctrine*. NAMB personnel do not maintain they were required by faith or doctrine to assert to third parties that Dr. McRaney is a liar, "has no integrity," is a "nutcase" and "delusional,"[13] or to take the unprecedented step of posting his photo at the reception desk of NAMB's headquarters for the purpose of denying him entry to the building, communicating to visitors that Dr. McRaney was not to be trusted and an enemy of NAMB.[14] *Cf. Ogle*, 279 Fed. Appx. at 396

---

[13] While under oath during depositions in this case, NAMB witnesses described Dr. McRaney as: "intelligent"; "hard working"; "talented"; having "great vision"; having "courage"; "not afraid to tackle hard issues"; "a man of integrity"; "and a man of truth." *See* ROA.3328.

[14] *See* ROA.3323 ("Numerous NAMB witnesses confirmed that Dr. McRaney alone received the treatment of having his photograph posted at NAMB's reception desk for the purpose of denying him entry. Ferrer Tr. 90:7-22 (never seen "a similar photograph of anyone else posted in the same or similar position"); Wigginton Tr. 60:8-13 (unable to recall any other circumstance where "a photograph of an individual was put up at the reception desk at NAMB's headquarters for the purpose of ensuring that the person did not enter in NAMB's headquarters or offices"); Barker Tr. 117:13-21) (17-year employee testifying that Dr. McRaney was the only example of someone whose photo was "posted at the NAMB reception or security desk for the purpose of keeping out someone or making sure that they were not welcome"); de Armas Tr. 104:21-25; Wood Tr. 112:9-19. The posting of Dr. McRaney's photo was discussed at a NAMB Board meeting, but NAMB refused to let the witness testify about the Board's discussion of the photo. *See* Wood Tr. 114:2-118:14. Former NAMB Executive Vice President, Carlos Ferrer, testified that it is not

(Defendant "does not claim that defamation is a practice of his church or is otherwise rooted in religious belief."). "[T]he laws of defamation and intention infliction of emotional distress (when based on defamation) can be applied based solely on secular rules." *Id*. at 395; *see also Burri Law PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022) (finding the ecclesiastical abstention doctrine inapplicable to claims for defamation and tortious interference); *Moon*, 833 Fed. Appx. at 880 (for defamation and tortious interference claims "we have a neutral principle to adjudicate them").

Trying to cast Dr. McRaney's case as about "faith and doctrine," the District Court uncritically accepted NAMB's assertion that the Strategic Partnership Agreement (SPA) between BCMD and NAMB was "an inherently religious" document. RE-55. The District Court did the same with NAMB's unsupported assertion that the SPA was a "joint ministry agreement." RE-48. The District Court was wrong to do so. For starters, Dr. McRaney contested those assertions in a formal evidentiary objection, which the District Court apparently ignored. ROA.3338-3339.[15] But an even more fundamental mistake by the District Court was to lose sight of the fact Dr. McRaney's claims are not about the few references to religious

---

unreasonable for Dr. McRaney to believe that NAMB's posting of his photograph at the NAMB reception desk injured his reputation. *See* Ferrer Tr. 99:23-100:12.").

[15] ROA.3338-3339 ("NAMB claims without support that the SPA is 'a joint ministry agreement.' The SPA itself does not use that language, and NAMB cited no record support for this undefined term. NAMB's then-Executive Vice President and Chief Financial Officer, Carlos Ferrer, testified at his deposition that the SPA is 'a contractual agreement.' Ferrer Tr. 108:19").

documents in the SPA. His claims that relate to the SPA are *only* about whether NAMB lied when it (repeatedly) asserted that Dr. McRaney "breached" the SPA, and the harm caused by that lie. Notably, NAMB's letter setting out the allegation of breach against Dr. McRaney made *no* reference to any religious dispute. ROA.2232. Instead, NAMB's letter asserted "breach"—a well-recognized civil law term, not a religious concept. *See* BLACK'S LAW DICTIONARY 232 (11th ed. 2019) ("A violation or infraction of a law, obligation or agreement, esp. of an official duty or legal obligation, whether by neglect, refusal, resistance, or inaction."). Consistent with that, NAMB's then-Executive Vice President and Chief Financial Officer, Carlos Ferrer, testified at his deposition that the SPA is "a contractual agreement." ROA.2966 (Ferrer Tr. 108:19). NAMB's own counsel referred to the SPA as a "contract" when objecting to a deposition question. ROA.3064 (Ezell Tr. 188:4-12). The notion that any of Dr. McRaney's claims turn on a religious dispute embodied in or about the SPA is contrived.

The District Court's conclusions about the ecclesiastical abstention doctrine also appear to be based on the premise that Dr. McRaney's claims "unavoidably require inquiring into *BCMD's* internal policies, procedures, and decision-making . . . ." RE-54 (emphasis added). But the lawsuit challenges *NAMB's* conduct. No court is being asked to pass judgment on actions taken by BCMD. BCMD is not a defendant, and faces no claims of liability or damages from Plaintiff.

32

It was merely a non-party during discovery, and provided documents in response to subpoenas—including a subpoena from NAMB (which could not have properly issued if the District Court lacked subject matter jurisdiction).[16]  If the District Court believed that a court or jury would be violating *BCMD's* rights by completing adjudication of Dr. McRaney's claims against NAMB, that idea does not withstand scrutiny.[17]

### D.    The District Court Failed to Assess Each Cause of Action

A case cannot be dismissed for lack of subject matter jurisdiction unless the court lacks jurisdiction over *each* cause of action.  *See*, *e.g.*, *Blessett v. Garcia*, 816 Fed. Appx. 945, 949 (5th Cir. 2020) (observing "[w]e first consider whether the district court had subject matter jurisdiction to entertain each of the claims alleged in [plaintiff's] complaint" and finding the district had subject matter jurisdiction over some but not all claims); *Moon*, 833 Fed. Appx. at 880 (assessing each claim and finding that for defamation and tortious interference claims "we have a neutral principle to adjudicate them").  Compounding the other significant errors the District Court made when dismissing for lack of subject matter jurisdiction, it made another by failing to carefully consider the application of the ecclesiastical abstention

---

[16]  BCMD's former President was deposed in his individual capacity, not as a representative of BCMD.  *See* ROA.1736 (Warren Tr.).

[17]  The District Court relied on this Court's decision in *Simpson v. Wells Lamont Corp.*, 494 F.2d 490 (5th Cir. 1974), but this Court distinguished *Simpson* in *McRaney I.  See* 966 F.3d at 349.

doctrine to each of Dr. McRaney's six causes of action—seemingly focusing on the three claims about NAMB's conduct leading up to his termination (Count 1-3). *See* RE-53 (Plaintiff's claims "are brought to protest his dismissal from church leadership."). This Court itself recognized in *McRaney I* that claim-by-claim evaluation is required. *See* 966 F.3d at 350 (whether "some or all" claims require deciding "purely ecclesiastical questions").

Properly construed and applied, the ecclesiastical abstention doctrine does not warrant (let alone require) dismissal of *any* of Dr. McRaney's causes of action. But the idea is even more dubious when applied to the claims concerning post-termination conduct (Counts 4-6). During that time, Dr. McRaney was not an employee of BCMD, and he had no dealings with NAMB. The District Court conducted no meaningful analysis of why those claims supposedly must be dismissed.

### E.    The District Court's Approach Undermines Religious Liberty and Raises Establishment Clause Concerns

The District Court's approach is incompatible with the First Amendment's Religion Clauses in two additional respects.

First, the District Court failed to pay attention to Dr. McRaney's own free exercise rights. As Dr. Hankins put it: Dr. McRaney "claims that an organization he did not work for (NAMB) improperly interfered in his relationship with his employer (BCMD), and then after he was terminated (due to that interference), NAMB

continued to interfere with his ability to make a living as a preacher or religious executive." The District Court "would deprive Dr. McRaney of his right to pursue relief in the courts of this country, on the ground that Dr. McRaney makes his living working with religious people and groups. Under that view, a citizen working with religious people and groups loses the right to challenge the conduct of a separate religious organization for which the citizen was never an employee or a member, simply because the citizen makes his living working with religious people and separate religious groups." That, as Dr. Hankins explained, "is an upside down understanding" of the First Amendment. ROA.684.

Second, the District Court's decision raises further serious concerns implicating both Religion Clauses. While Dr. McRaney's claims can be adjudicated without running afoul of the ecclesiastical abstention doctrine, the District Court's distortion of the doctrine has put the court in exactly the position it is supposed to avoid: weighing in on (and repudiating) fundamental tenets of Baptist polity.

In dismissing Dr. McRaney's case for lack of subject matter jurisdiction the District Court failed to consider or understand that there is no "Baptist Church" or "Southern Baptist Church," and to appreciate the centrality of autonomy as a Baptist principle. ROA.667-684 (Hankins Report). The District Court therefore egregiously erred when stating in its Memorandum Opinion:

- "Plaintiff's claims . . . are brought to protest his dismissal from ***church leadership***";

- Dr. McRaney's position at BCMD "by its very terms invokes ***the Church's*** religious mission";

- In his position at BCMD, Dr. McRaney "had a primary role in conveying ***the Baptist Church's*** message and carrying out ***its*** religious mission";

- It "would necessarily be required to interpret and decide matters of ***church government***"; and

- The reasons BCMD decided to terminate Dr. McRaney is "an internal management decision that is left . . . entirely to the discretion of ***the Church***." (RE-53-55) (emphasis added).

Dr. Hankins's warning in his expert report proved prescient:

> It is not going too far to say that one of the principal reasons Baptists came into existence was because of the theological belief that religious authority resides only in local congregations . . . . Should the courts accept NAMB's interpretation [as the District Court effectively did], we would have a most curious situation, to put it mildly, where Baptists say they are one thing, but the courts treat them as something else. In short, the U.S. court system will have transformed and redefined Baptists into something they have always insisted they are not. (ROA.684).

For this reason too, the District Court's decision cannot stand.

## III.    If Subject Matter Jurisdiction Were Absent, the District Court Would Be Required to Remand the Case to State Court

For the reasons explained above, the District Court has subject matter

jurisdiction over Dr. McRaney's claims—and the District Court's Order should be

vacated on that basis.  But if the District Court had been correct about the lack of

subject matter jurisdiction, it erred in refusing to remand the case to state court, from which NAMB removed it.

Congress has expressly directed in the statute governing removal that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded" to state court.   28 U.S.C. § 1447(c) (emphasis added).  The statute does not vest a court with discretion or provide for any exceptions.   The District Court acknowledged the statutory language, but declined to abide by it.  That was an error for at least three reasons.

First, there is "no warrant to ignore clear statutory language," even on the "ground that other courts have done so."  *Milner v. Department of Navy*, 562 U.S. 562, 576 (2011); *see also Osborn v. Haley*, 549 U.S. 225, 240 n.8 (2007) (observing §1447(c) provides "a case *must* be remanded if 'it appears that the district court lacks subject matter jurisdiction.'") (emphasis added); *id*. at 263 n. 2 (Scalia, J., dissenting) (§1447(c) "specif[ies] as grounds for *mandatory* remand that 'the district court lacks subject matter jurisdiction.'") (emphasis added).  The statute is clear, and therefore remand would be required if the District Court actually lacked subject matter jurisdiction (which it does not).

Second, the District Court justified its refusal to remand on the basis of a futility theory: "If this Court lacks jurisdiction to hear the Plaintiff's claims because the claims involve ecclesiastical disputes then the state court likewise lacks

jurisdiction." RE-58. The District Court invoked *Boaz Legacy, L.P. v. Roberts*, 628 Fed. Appx. 318 (5th Cir. 2016), and *Trust Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144 (5th Cir. 1992), as support for its refusal to remand. But *Boaz*, a non-precedential decision, concerns only the "local action doctrine"; it does not authorize a refusal to follow 28 U.S.C. § 1447(c) in this case. *See* 628 Fed. Appx. at 319-320. *Trust Co.*, while precedential, is inapposite because there the court of appeals found subject matter jurisdiction present, and the opinion never mentions Section 1447(c) or remand. *See* 950 F.2d at 1149-1150.

While it should have been clear to the District Court that it did not have discretion to ignore Section 1447(c), a recent decision by this Court, filed the day after the Order and Memorandum Opinion, eliminates all doubt. In *Spivey*, this Court conclusively ruled that Section 1447(c) does not include "an unwritten futility exception." 79 F.4th at 448. After noting there had been "some confusion over the Fifth Circuit rule" (noting *Boaz* and other decisions), *id.* at 447, the Court held "in accordance with the statute's plain text . . . § 1447(c) means what it says, admits of no exceptions, and requires remand even when the district court thinks it futile." *Id.* at 448.

Third, the District Court's refusal to remand is contrary to federalism principles. The District Court has no authority to make legal determinations for state courts, or impose its view of the ecclesiastical abstention doctrine on a state court.

If a federal court determines it lacks subject matter jurisdiction over a case removed from state court, federalism principles do not permit the federal court to refuse remand because it has decided the state court too would lack jurisdiction. Federalism requires remand to let the state court decide that question for itself—subject to oversight by the Supreme Court of the United States regarding any determination of federal law.

## CONCLUSION

The District Court's order should be vacated, and the case remanded to the District Court to adjudicate the fully briefed motions for summary judgment. But if this Court determines subject matter jurisdiction is absent, the District Court's Order must be vacated, and the District Court should be instructed to remand the case to state court, as required by 28 U.S.C. § 1447(c).

Respectfully submitted,

 s/ Scott E. Gant

Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727
sgant@bsfllp.com

*Counsel for Plaintiff-Appellant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2023, a true and correct copy of the foregoing was served via electronic filing with the Clerk of Court and all registered ECF users. Upon acceptance by the Court of the e-filed document, paper copies will be filed with the Court within the time provided in the Court's rules via Federal Express.

October 31, 2023                    s/ Scott E. Gant

## **CERTIFICATE OF COMPLIANCE**

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word.  Excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), this brief contains 10,013 words.


October 31, 2023                    s/ Scott E. Gant