# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 23-60494

WILL McRANEY,

*Plaintiff-Appellant,*

v.

THE NORTH AMERICAN MISSION BOARD
OF THE SOUTHERN BAPTIST CONVENTION, INCORPORATED,

*Defendant- Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI, ABERDEEN IN NO. 1:17-CV-80
HONORABLE GLEN H. DAVIDSON, U.S. DISTRICT JUDGE

**BRIEF FOR THE *AMICUS CURIAE*
EXECUTIVE COMMITTEE OF THE SOUTHERN BAPTIST
CONVENTION**

LARRY L. CRAIN
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027
(615) 376-2600
larry@crainlaw.legal
*Counsel for Amicus Curiae
Executive Committee of the Southern
Baptist Convention*

# TABLE OF CONTENTS

<u>**Page**</u>

TABLE OF CONTENTS ...............................................................i

TABLE OF AUTHORITIES ...........................................................ii

SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES .................1

INTEREST OF AMICUS CURIAE.................................................1

SOUTHERN BAPTIST POLITY……………………………………..3

SUMMARY OF ARGUMENT ......................................................9

ARGUMENT ......................................................................10

    A. Judicial Review of the Claims Presented Is Unavoidably
       Barred By The Doctrine of Ecclesiastical Abstention  ................10

    B. The Plaintiff's Claims Are Inextricably Intertwined With
       Issues Of Faith And Religious Doctrine ......................................14

    C. The Mere Fact That The Plaintiff Couches His Suit As
       One For Tortious Misconduct Does Not Insulate It From
       the Ecclesiastical Abstention Doctrine...........................................16

CONCLUSION .........................................................................18

CERTIFICATE OF COMPLIANCE ............................................18

CERTIFICATE OF SERVICE ......................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Epperson v. Myers*
    58 So.2d 150 (1952)..........................................................................................15

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*
    565 U.S. 171, 132 S.Ct. 694 (2012)................................................................10

*Hutchinson v. Thomas*
    789 F.2d 392 (6th Cir. 1986), *certiorari denied* 479 U.S. 885,
    107 S.Ct. 277, 93 L.Ed.2d 253 (1986) …………………………………………17

*In re Diocese of Lubbock*
    624 S.W.3d 506 (Tex. 2021) ..........................................................................17

*In Re Galilee Baptist Church*
    279 Ala. 393, 186 So. 2d 102 (1966) .............................................................14

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*
    344 U.S. 94, 115–16, 73 S.Ct. 143, 97 L.Ed. 120 (1952)   …………...3,11,12

*Kreshik v. St. Nicholas Cathedral*
    363 U.S. 190, 80 S.Ct. 1037, 4 L.Ed.2d 1140 (1960)..................................12

*McClure v. Salvation Army*,
    460 F.2d 553, 558 (5th Cir.1972) …………………………………………..9,11

*McRaney v. North American Mission Board of the Southern Baptist Convention, Incorporated*
    966 F.3d 346 (5th Cir. 2020) ..........................................................................11

*Mouton v. Christian Faith Missionary Baptist Church*
    498 S.W.3d 143 (Tex.App. 2016) ...................................................................13

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*
    140 S.Ct. 2049(2020)......................................................................................12

*Paul v. Watchtower Bible & Tract Soc. Of New York, Inc.*
       819 F.2d 875, 878 (9th Cir. 1987) ……………………………………12,16

*Salzgaber v. First Christian Church*
       65 Ohio App.3d 368, 583 N.E.2d 1361(1989)............................17

*Sanders v. Casa View Baptist Church*
       898 F.Supp. 1169 (N.D. Tex. 1995) ...........................................14

*Serbian E. Orthodox Diocese for U.S. and Can. v. Milivojevich*
       426 U.S. 696, 713, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976)........................11

*Simpson v. Wells Lamont Corp.*
       494 F.2d 490 (5th Cir. 1974) ....................................................12

*Tharp v. Hillcrest Baptist Church of Columbus*
       204 N.E.3d 709 (Ohio App. 10 Dist., 2022) ..............................13

*Thidbodeau v. American Baptist Churches of Conn.*
       994 A.2d 212 (2010) ..................................................................17

*Watson v. Jones*
       80 U.S. 679, 13 Wall. 679, 733, 20 L.Ed. 666 (1871) ...............11

*Waverly Hall Baptist Church, Inc. v. Branham*
       625 S.W.2d 23 (Ga. Ct.App. 2005)............................................14

## Other Authorities

Patrick Hornbeck, *A Nun, A Synagogue Janitor, and a Social
       Work Professor Walk Up To The Bar: The Expanding Ministerial
       Exception,* 70 Buff. L. Rev. 695 (2022) ...........................................13

Jarod Gonzalez, *At The Intersection of Religious Organization
       Missions And Employment Laws: The Case of Minister
       Employment Suits,* 65 Cath. U. L. Rev. 303 (2015)........................11

James L. Sullivan, *Baptist Polity As I See It,* p. 33, 1998 ed.................................3,7

*Encyclopedia of Southern Baptists,* Broadman Press,
　　Vol. 1, p. 323, 1958 ed. ……………………………………………..5

Dale R. Agthe, *Judicial Review of Termination of Pastor's*
　　*Employment By Local Church or Temple*
　　31 A.L.R.4ᵗʰ 851 (1984) .................................................................15

B. Jessie Hill, *Kingdom Without End? The Inevitable Expansion of*
　　*Religious Sovereignty Claims*
　　20 LEWIS & CLARK L. REV. 1177 (2017) .................................................13

Michael W. McConnell, *The Origins and Historical Understanding of*
　　*Free  Exercise of Religion*
　　　103 HARV. L. REV. 1409 (1990) ...............................................................12

Douglas Laycock, *Towards a General Theory of the Religion Clauses:*
*The Case of Church Labor Relations and the Right to Church Autonomy*
　　　81 COLUM. L. REV. 1373 (1981) ...............................................................12

## SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES

Under Fifth Circuit Rule 29.2, undersigned counsel supplements Appellant's Certificate of Interested Parties to fully disclose all persons with interest in this amicus brief. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Larry L. Crain, counsel for the *amicus curiae*.

2. The Executive Committee of the Southern Baptist Convention – *amicus curiae*.

3. Crain Law Group, PLLC – law firm of counsel for *amicus curiae*.

## I.      INTEREST OF *AMICUS CURIAE*[1]

According to its Constitution, The Southern Baptist Convention (SBC) is a "general organization for Baptists in the United States and its territories for the promotion of Christian missions at home and abroad and any other objects such as Christian education, benevolent enterprises, and social services which it may deem proper and advisable for the furtherance of the Kingdom of God." Constitution of

---

[1] This brief is submitted under <u>Federal Rule of Appellate Procedure 29(a)</u> with the consent of the Appellee, The North American Mission Board of the Southern Baptist Convention, Incorporated. The Appellant, Will McRaney has withheld his consent at this time. Undersigned counsel for *amicus curiae* certifies that this brief was not authorized in whole or in part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than *amicus* and its counsel have contributed money for this brief.

the Southern Baptist Convention, Art. II. The SBC is not a hierarchal church. "The Convention shall consist of messengers who are members of Baptist churches in cooperation with the Convention." (SBC *Constitution,* Art. III). The messengers meet for two days each year to conduct the business of the SBC.

The SBC corporation is atypical of modern corporations. It was created by an Act of the Georgia legislature in 1845 and is not subject to current Georgia nonprofit corporation acts. It has no board of directors.

Executive Committee of the Southern Baptist Convention (ECSBC) is a Tennessee religious and nonprofit Corporation. ECSBC is "specifically authorized, instructed, and commissioned" by the SBC to perform certain enumerated duties on behalf of the SBC, including "To act for the Convention *ad interim* [that is, in the interim between the two-day annual meetings of the SBC messengers] in all matters not otherwise provided for." (SBC *Bylaws* §18). This *amicus* brief is filed on behalf of SBC by ECSBC pursuant to its *ad interim* authority and responsibility.

Baptists in the United States have championed religious freedom since colonial days. The SBC's preamble to its statement of faith, *The Baptist Faith and Message* (*BFM* ), states "Baptists cherish and defend religious liberty . . . ." (*BFM Preamble*) and the BFM declares: "A free church in a free state is the Christian ideal, and this implies the right of free and unhindered access to God on the part of all men, and the right to form and propagate opinions in the sphere of religion without

2

interference by the civil power." (*BFM*, Art. XVII).

For Southern Baptists, the autonomy of churches is a matter of faith and doctrine. The *Amicus* files this brief to communicate clearly to the Court the polity of Southern Baptists and to protect the right of Southern Baptists and all religious bodies, "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine," *Kedroff v. St. Nicholas Cathedral*, 344 US. 94, 116 (1952), and to defend the constitutional position that Southern Baptists are afforded the protections of the ecclesiastical abstention doctrine.

## II.    SOUTHERN BAPTIST POLITY

"Polity is a system by which a group of people chooses to govern themselves or are governed." (James L. Sullivan, *Baptist Polity As I See It,* p. 33, 1998 ed.) When Southern Baptists speak of polity, they are talking about the way the convention is governed and structured, and how and why it functions as it does.

The purpose of the Southern Baptist Convention is to "provide a general organization for Baptists in the United States and its territories for the promotion of Christian missions at home and abroad and any other objects such as Christian education, benevolent enterprises, and social services which it may deem proper and advisable for the furtherance of the Kingdom of God." Constitution, Art. II. "While independent and sovereign in its own sphere, the Convention does not claim and will never attempt to exercise any authority over any other Baptist body, whether church,

auxiliary organizations, associations, or convention." SBC *Constitution,* Art. IV.

Southern Baptist  consist of the SBC and organizations that fall within one of five categories:

1. <u>Cooperating Local Churches</u>.   Local churches are defined in the *BFM*:  "A New Testament Church of the Lord Jesus Christ is an autonomous local congregation of baptized believers, associated by covenant in the faith and fellowship of the gospel. . . .  Each congregation operates under the Lordship of Christ through democratic processes."  (*BFM*, Art. VI)  Each local church is a separate legal entity governed by its members.  The concept of local church autonomy is a bedrock principle of Southern Baptist polity rooted in religious doctrine.  It reflects Southern Baptists' understanding of a New Testament church.

A "Cooperating Church" is a local church that voluntarily elects to cooperate with the SBC by (a) having a faith and practice which closely identifies with the *BFM*; (b) contributing financially to one or more SBC ministry causes, and (c) affirmatively indicating an intention to cooperate with the SBC.  A local church can choose to cease being a Cooperating Church at any time.  It can choose to again become a Cooperating Church by meeting the three requirements.  "Cooperating Church" as used in this brief includes any religious organizations controlled by a Cooperating Church.

2. <u>Local or District Associations.</u>   Local associations ("Associations") are a

cooperative effort of local churches within a city, county, or other similar regional area within a state.  There is no legal relationship or governance control between the SBC and any Association.  Associations may and do cooperate with one another or with their respective State Convention to conduct religious ministry.   Churches which cooperate with an Association may or may not be SBC Cooperating Churches.

3.  <u>State Conventions.</u>  State conventions are separate conventions of local churches covering a broader geographical area than an Association, generally one state or two or more adjacent states.  Those regional conventions that cooperate with the SBC ("State Conventions" below) are independent and autonomous bodies.  Churches that cooperate with a State Convention may or may not be SBC Cooperating Churches.

There is no legal relationship or governance control between the SBC and any State Convention.  State Conventions may and do cooperate with one another, as well as with the SBC, to conduct religious ministry.  Most notably, State Conventions and the SBC work together to raise funds through the Cooperative Program.

> The Cooperative Program is "a unified appeal for all denominational causes, state and Convention-wide - between the Southern Baptist Convention as an organization and each separate state convention as an organization.  This cooperation involves three things, all related to the question of money; the soliciting, the securing, and the dividing of funds." (*Encyclopedia of Southern Baptists,* Broadman Press, Vol. 1, p. 323, 1958 ed.)

> "State Conventions" as used in this brief includes religious organizations

controlled by a State Convention. The Baptist Convention of Maryland/Delaware (BCMD), a party to this litigation, is a State Convention which cooperates with the SBC through the Cooperative Program.

4. <u>SBC Entities.</u> The SBC elects the directors of the ECSBC and eleven (11) other enumerated corporations, all twelve of which have the SBC corporation as their sole member (these twelve corporations are referred to below as "SBC Entities"). "SBC Entities" as used in this brief includes subsidiary corporations for which the SBC Entity elects the directors. North American Mission Board of the Southern Baptist Convention (NAMB) is a party to this litigation and is an SBC Entity.

5. <u>Auxiliary.</u> There is one "auxiliary to the SBC," that being the Woman's Missionary Union, which is autonomous but supports missionary efforts of the SBC.

The SBC neither claims nor exercises any control over any Baptist organization except SBC Entities.[2] This foundational concept has been a hallmark of Southern Baptist polity since the SBC was formed in 1845: "While independent and sovereign in its own sphere, the Convention does not claim and will never attempt to exercise any authority over any other Baptist body, whether church, auxiliary organizations, associations, or convention. (SBC *Constitution,* Art. IV)

---

[2] The "control" that the SBC exercises with respect to SBC Entities is limited to the control commonly exercised by a member of a nonprofit corporation and is more specifically described below in the discussion of SBC's relationship with NAMB.

The hallmark of Southern Baptist polity is cooperation and not control.  A local church, in its autonomy, may choose to cooperate with an Association, with a State Convention, with the SBC, with one or more such organizations, or with none of them.  Just as each church is autonomous, Associations and State Conventions are autonomous.  There is no hierarchy.

> The Southern Baptist Convention is not over the state conventions, or the associations.  All are autonomous as are the churches. These three bodies [SBC, State Conventions, and Associations] are on the same level organizationally, and all are made up of messengers sent directly by the churches, making them equidistant from the churches organizationally, while their territories overlap geographically. There are no inferior or superior Baptist bodies in the Southern Baptist denomination." (*Baptist Polity*, *id.* p 67).

**Polity Between NAMB and BCMD**

NAMB is a Georgia nonprofit corporation fostered by the SBC.  Its directors are appointed by the SBC, the corporation's sole member.  NAMB is governed by its board of directors subject to the SBC's enumerated rights as NAMB's member, which are:  the right to appoint and remove NAMB's directors; the right to approve any amendment to NAMB's Articles of Incorporation; the right to approve the sale, lease, exchange or other disposition of all or substantially all of NAMB's property not in the usual and regular course of its activities; and the right to approve any merger or dissolution involving NAMB.  (NAMB *Articles of Incorporation*)

As a State Convention, BCMD is an independent and self-governing organization.  It has no intrinsic relationship with the SBC or any SBC Entity except

a relationship based on voluntary cooperation.  As a matter of polity, neither the SBC nor any SBC Entity has any right or control over BCMD's ministries, employment decisions, budget, or any other operations.

Although there exists no business or governance relationship between any SBC Entity and any State Convention under Southern Baptist polity, these organizations are free to form their own relationships based on either voluntary cooperation or by entering into contracts.  NAMB and BCMD entered into a formal contract known as the Strategic Partnership Agreement (SPA).  In that agreement "the two partners jointly develop, administer, and evaluate a strategic plan for penetrating lostness through church planting and evangelism." (SPA, General Principles, § 1).  The SPA created legal, operational, and financial entanglements between NAMB and BCMD which did not previously exist. It changed the relationship from that which existed under Southern Baptist polity.

Plaintiff, Will McRaney, formerly served as the chief executive officer of BCMD while BCMD and NAMB were operating under the SPA for the purpose of ministry and evangelism.  In order to adjudicate the dispute between the plaintiff and NAMB, a court would first be required to delve into BCMD's reasons for terminating plaintiff's employment.  The District Court correctly determined that evaluating that action by BCMD would require the court to become entangled in BCMD's decision about who should serve as its highest-ranking ministerial

employee.  Such an inquiry is barred by the First Amendment, as explained below.

Even if this Court could pass judgment on such a crucial decision involving a convention of churches and its chief ministerial employee, the Court would then find itself barred by the First Amendment from sorting through the relationship established between NAMB and BCMD by the SPA.  The SPA involved decisions between NAMB and the BCMD which the District Court found to be "steeped in religious doctrine" and involving policies and procedures to be utilized in carrying out a joint religious undertaking.

## III.    SUMMARY OF ARGUMENT

For the Court to adjudicate the merits of the claims presented in this case would necessarily entangle it in the religious doctrines, faith, scripture-based tenets, beliefs, governance, polity and missionary objectives of BCMD and NAMB.  Such judicial review would unquestionably run afoul of the jurisdictional bar under the ecclesiastical abstention doctrine.  As this Court has previously recognized, the relationship between a church and its ministers is its "lifeblood".  *McClure v. Salvation Army*, 460 F.2d 553, 558 (5th Cir.1972). So too, the ability of  religious bodies like those at the center of this controversy, to self-govern and appoint and remove those in ministerial leadership positions free from undue governmental interference is quintessentially an exercise of their prerogative under the religion clauses of the First Amendment.

The mere fact that the Plaintiff's action is cloaked in the form of tort-based claims does not insulate them from an application of the ecclesiastical abstention doctrine. The District Court correctly found that a resolution of the claims presented would require the Court to delve into the reasons underlying the Plaintiff's termination by BCMD, and the religious policy considerations for the decision.

## IV.    ARGUMENT

### A. Judicial Review of the Claims Presented Is Unavoidably Barred By The Doctrine of Ecclesiastical Abstention.

Religious organizations have the right under the First Amendment to determine their organizational structure, define their missions and select those in leadership positions to carry out their religious goals free from governmental interference. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 132 S.Ct. 694 (2012).  The constitutional underpinnings of this doctrine are rooted in both the Establishment Clause proscription against excessive entanglement in the affairs of religion, as well as the Free Exercise Clause interest in not impeding a religious body's freedom to shape its faith and accomplish its goals. *Id*. at 706. As Chief Justice Roberts capsulized this rule in *Hosanna-Tabor*: "The Establishment Clause prevents the government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own." *Id*. at 184. The doctrine is also grounded in the protection of church autonomy.

The right of religious bodies to decide for themselves both their missionary goals and objectives, as well as the suitability of those whom they install in leadership positions to carry out its religious mission has long been recognized by this Circuit.  See Jarod Gonzalez, *At The Intersection of Religious Organization Missions And Employment Laws:  The Case of Minister Employment Suits*, 65 Cath. U. L. Rev. 303 (2015).  Indeed, this court has recognized that "[t]he relationship between an organized church and its ministers is its lifeblood." *McClure v. Salvation Army*, 460 F.2d 553, 558 (5th Cir.1972).

Recently, this Court further affirmed its commitment to protecting this vital aspect of internal religious governance from governmental interference by holding that "(t)he ecclesiastical abstention doctrine recognizes that the Establishment Clause of the First Amendment precludes judicial review of claims that require resolution of 'strictly and purely ecclesiastical' questions." *McRaney v. North American Mission Board of the Southern Baptist Convention, Incorporated,* 966 F.3d 346, 348–49 (5th Cir. 2020)("*McRaney I*"), citing *Serbian E. Orthodox Diocese for U.S. and Can. v. Milivojevich,* 426 U.S. 696, 713, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (quoting *Watson v. Jones*, 80 U.S. 679, 13 Wall. 679, 733, 20 L.Ed. 666 (1871)); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 115–16, 73 S.Ct. 143, 97 L.Ed. 120 (1952); *Kreshik v. St. Nicholas Cathedral*, 363 U.S. 190, 190–91, 80 S.Ct. 1037, 4 L.Ed.2d 1140 (1960). "[M]atters

of church government, as well as those of faith and doctrine" constitute purely ecclesiastical questions. *Kedroff*, 344 U.S. at 116, 73 S.Ct. 143; and *Simpson v. Wells Lamont Corp.*, 494 F.2d 490, 493 (5th Cir. 1974) (emphasizing that the ecclesiastical abstention doctrine covers matters of church government as well as matters of religious doctrine).

The "doctrine of ecclesiastical abstention ... provides that civil courts may not redetermine the correctness of an interpretation of a canonical text or some decision relating to government of the religious polity." *Paul v. Watchtower Bible & Tract Soc. Of New York, Inc.*, 819 F.2d 875, 878, n.l (9th Cir. 1987). This doctrine is rooted in the First Amendment to the United States Constitution, and its purpose is to prevent the civil courts from engaging in unwarranted interference with the practices, internal affairs, and management of religious organizations; see *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2060 (2020).

The doctrine has been expounded upon by certain Religion Clause scholars including Douglas Laycock and Michael McConnell, as an element of the broader "church autonomy." See generally Douglas Laycock, *Towards a General Theory of the Religion Clauses: The Case of Church Labor Relations and the Right to Church Autonomy,* 81 COLUM. L. REV. 1373 (1981); Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion,* 103 HARV. L. REV. 1409 (1990). See generally Patrick Hornbeck, *A Nun, A Synagogue Janitor, and a*

*Social Work Professor Walk Up To The Bar:  The Expanding Ministerial Exception,* 70 Buff. L. Rev. 695 (2022); B. Jessie Hill, *Kingdom Without End? The Inevitable Expansion of Religious Sovereignty Claims*, 20 LEWIS & CLARK L. REV. 1177 (2017). The doctrine of church autonomy extends in the instant case to matters involving the internal policies of BCMD, as well as its relationship and interaction with the NAMB.

The doctrine applies with equal force to Southern Baptist Cooperating Local Churches, Associations, State Conventions, and SBC Entities, all of which are religious entities.  Courts have routinely recognized the right of religious entities, as autonomous, self-determining religious bodies, to be free from unwarranted governmental interference in conducting their internal affairs.  See *e.g., Mouton v. Christian Faith Missionary Baptist Church*, 498 S.W.3d 143, 148-49 (Tex.App. 2016)("The Free Exercise clause of the First Amendment to the United States Constitution precludes civil courts from delving into matters focused on 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of a church to the standard of morals required of them.); *Tharp v. Hillcrest Baptist Church of Columbus*, 204 N.E.3d 709 (Ohio App. 10 Dist., 2022)(church member's claim against Baptist church and its pastor for defamation barred by ecclesiastical abstention doctrine).

### B.  The Plaintiff's Claims Are Inextricably Intertwined With Issues Of Faith And Religious Doctrine.

The gravamen of this dispute, as the District Court was careful to recognize, is the Plaintiff's protest of his dismissal from church leadership and the BCMD's reasons for this decision – a decision that is undoubtedly based on religious criteria. The District Court specifically stated that "it cannot adjudicate Plaintiff's claims in [the] case without impermissibly delving into church matters in violation of the ecclesiastical abstention doctrine." Furthermore, the District Court stated that "Plaintiff's claims unavoidably require inquiring into [the Baptist Convention of Maryland/Delaware's] internal policies, procedure and decision-making, in order to determine if NAMB influenced BCMD's decision, the ecclesiastical abstention doctrine is squarely and obviously invoked, and the Court cannot proceed to inquire into such matters and adjudicate Plaintiff's claims." [Doc. 287, Memorandum Opinion, PageID # 8].

In the following cases involving termination of a minister by a religious board or congregation, courts recognized that employment decisions of religious bodies are *per se* religious matters and not reviewable by civil courts: *Sanders v. Casa View Baptist Church*, 898 F.Supp. 1169 (N.D. Tex. 1995); *Waverly Hall Baptist Church, Inc. v. Branham,* 625 S.W.2d 23 (Ga. Ct.App. 2005); *In Re Galilee Baptist Church,* 279 Ala. 393, 186 So. 2d 102 (1966); *Epperson v. Myers*, 58 So.2d150 (1952); See generally, Dale R. Agthe, *Judicial Review of Termination of Pastor's Employment By Local Church or Temple*, 31 A.L.R.4th 851 (1984).

14

Additionally, the Strategic Partnership Agreement (SPA), which created the legal, operational, and financial connection between BCMD and NAMB, is also a religious document between two religious entities. In the SPA it states that "the two partners jointly develop, administer, and evaluate a strategic plan for penetrating lostness through church planting and evangelism." (SPA, General Principles, § 1). The Plaintiff's role as Executive Director at BCMD was directly connected to the SPA, which recites in its Preamble to a Bible scripture verse from I Cor. 3:7-8, and contains the following statement of "General Principles":

    a.   Biblical Authority
    b.   Kingdom Advancement
    c.   Partnership
    d.   Evangelism and Missions
    e.   Mutual Accountability
    f.   Autonomy of Individual Baptist Entities
    g.   Contextualized Focus

[Answer, Exhibit A, Doc. 3-1, PageID # 35]

If there is any bright line rule embodied in the ecclesiastical abstention doctrine, it is that a civil court may not delve into the correctness of an interpretation of religious text or some decision relating to government of the religious polity. *Paul v. Watchtower Bible & Tract Soc. Of New York, Inc*., 819 F.2d 875, 878, n. 1 [9th Cir.1987], *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987). The

adjudication of the Plaintiff's claims would unavoidably thrust the court into parsing religious-based arguments on why the Plaintiff's termination was in furtherance of the scripture-based goals and objectives of BCMD and NAMB, both religious entities jointly involved in religious ministry. The court is barred from sorting through the relationship established between NAMB and BCMD in carrying out a joint religious undertaking.

### C. The Mere Fact That The Plaintiff Couches His Suit As One For Tortious Misconduct Does Not Insulate It From the Ecclesiastical Abstention Doctrine.

The Plaintiff in this case attempts to dress up what is essentially a religious dispute over the internal decision of a church organization to remove him from a ministerial leadership position as a tort-based action for defamation and intentional interference with employment. The mere fact that the Plaintiff seeks to recast his claims as tort theories against NAMB does operate as an end run around the First Amendment's prohibition under the ecclesiastical abstention doctrine. Courts have routinely seen through similar attempts to litigate essentially religious disputes under the guise of tort allegations, and have been quick to avoid entanglement in the internal management decisions of a religious entity. For example, in *In re Diocese of Lubbock*, 624 S.W.3d 506, (Tex. 2021)(the court held that even though the lawsuit asserted tort claims such as defamation and intentional infliction of

emotional distress, the resolution of the underlying issue still required the court to delve into the religious governance of the church.

> Indeed, any investigation would necessarily put to question the internal decision making of a church judicatory body. . . and would, in part, reveal internal communications and interfere with decision-making processes of the religious organization. But courts may not investigate and resolve the application of religious doctrine and practice.

*Id*. at 508–09.

Similarly, in *Salzgaber v. First Christian Church*, 65 Ohio App.3d 368, 583 N.E.2d 1361(1989), two former pastors of the First Christian Church sued the church and two individual members of the church for wrongful discharge, breach of contract, intentional interference with contract, defamation and intentional infliction of emotional distress. The court held that even though a court may inquire into purely secular matters, that doctrine " 'has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be.' " *Salzgaber,* 65 Ohio App.3d at 372, 583 N.E.2d at 1364, quoting *Hutchinson v. Thomas,* 789 F.2d 392 (6th Cir. 1986), *certiorari denied* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). See also, *Thidbodeau v. American Baptist Churches of Conn.,* 994 A.2d 212 (2010)(Minister's claim that church organization engaged in negligent infliction of emotional distress by removing him from the pulpit was not subject to resolution in civil court under the First Amendment).

## CONCLUSION

Based on the foregoing reasoning and authorities, *Amicus* respectfully submits that the decision of the District Court should be affirmed in all respects and this action dismissed.

/s/ Larry L. Crain
LARRY L. CRAIN
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Tel:  (615) 376-2600
Fax:  (615) 345-6009
Email:  larry@crainlaw.legal

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. The foregoing motion complies with the word limits of Fed. R. App. P. 32(g)(1) and Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. R. App. P. 27(d)(2), the word count feature in Microsoft Word reports that this document contains 3,830 words.

2. The foregoing motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because

this document has been prepared in a proportionally spaced typeface using Microsoft

Word in Times New Roman, size 14 font.

> */s Larry L. Crain*
> Larry L. Crain, Tn.Sup.Crt. # 009040
> Crain Law Group, PLLC
>  5214 Maryland Way, Suite 402
> Brentwood, TN. 37027
> Tel.  (615) 376-2600
> Email:  larry@crainlaw.legal
>
> *Counsel for Amicus Curiae*
> *Executive Committee of the Southern*
> *Baptist Convention*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2023, I filed the foregoing via the

CM/ECF system, which will send a Notification of Electronic Filing to the following

counsel of record:

Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727

*Counsel for Plaintiff-Appellant*
*Will McRaney*

Matthew T. Martens
Timothy J. Perla
Joshua A. Vittor
WILLMER CUTLER PICKERING HALE AND DORR, LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC  20037
(202) 663-6000
Matthew.martens@wilmerhale.com
Timothy.perla@wilmerhale.com
Joshua.vittor@wilmerhale.com

*Counsel for Defendant-Appellee*
*The North American Mission Board*
*of the Southern Baptist Convention, Incorporated*


Michelle Stratton
SMYSER KAPLAN & VESELKA LLP
717 Texas Avenue, Suite 2800
Houston, Texas 77002
(713) 221-2300
mstratton@skv.com

*Counsel for Amici Curiae Current and*
*Former Baptist Leaders*


/s/ Larry L. Crain
LARRY L. CRAIN
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Tel:  (615) 376-2600
Fax:  (615) 345-6009
larry@crainlaw.legal

*Counsel for Amicus Curiae*
*Executive Committee of the Southern*
*Baptist Convention*